IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DAVID J. FOSKUHL,                    )
                                     )
                  Plaintiff,         )
                                     )
vs.                                  )      Case No. 06-1048-WEB
                                     )
JO ANNE B. BARNHART,                 )
COMMISSIONER OF                      )
SOCIAL SECURITY,                     )
                                     )
                  Defendant.         )
_____)


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.  The
matter has been fully briefed by the parties and has been referred
to this court for a recommendation and report.

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner as
to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision

1

to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

2

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability

3

to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. <u>Barnhart v. Thomas</u>, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. <u>Nielson</u>, 992 F.2d at 1120; <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence.

Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

Administrative law judge (ALJ) George M. Bock issued his decision on September 23, 2003 (R. at 21-30).  At step one, the ALJ found that plaintiff had not performed substantial gainful activity since July 1, 2001 (R. at 22-23).  At step two, the ALJ found that plaintiff had the following severe impairments: AIDS, with an indication of HIV, and cervical degenerative disc disease. The ALJ further determined at step two that although plaintiff was recently diagnosed with anxiety disorder, it did not meet the durational requirements to be considered severe.  The ALJ also found that plaintiff's hiatal hernia, situational depression, and other back complaints were non-severe in nature (R. at 25-26).  At step three, the ALJ found that plaintiff did not meet or equal a listed impairment (R. at 26).  After establishing plaintiff's RFC, the ALJ, relying on the testimony of a vocational expert, found at step four that plaintiff could perform some past relevant work, and further found at step five that plaintiff could perform a

significant number of other jobs in the national economy (R. at 28-29).  Therefore, the ALJ concluded that plaintiff was not disabled.[1]  On December 1, 2005, the Appeals Council, after reviewing additional medical evidence submitted after the ALJ decision, denied plaintiff's request for review of the ALJ decision, finding that the additional medical evidence did not provide a basis for changing the ALJ's decision (R. at 8-9).

**I.  Did the ALJ err in his finding at step two that plaintiff did not have a severe mental impairment?**

The burden of proof at step two is on the plaintiff.  <u>See</u> <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1169 (10th Cir. 1997); <u>see</u> <u>Williams v. Bowen</u>, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on

_____

[1]The record establishes that based on a subsequent application for disability, plaintiff was found to be disabled as of September 24, 2003 based on the finding that he met listed impairment 14.08(N)(1) (R. at 9).

his or her ability to do basic work activities.  <u>Williams</u>, 844

F.2d at 751.  However, the claimant must show more than the mere

presence of a condition or ailment.  If the medical severity of a

claimant's impairments is so slight that the impairments could not

interfere with or have a serious impact on the claimant's ability

to do basic work activities, the impairments do not prevent the

claimant from engaging in substantial work activity.  Thus, at

step two, the ALJ looks at the claimant's impairment or

combination of impairments only and determines the impact the

impairment would have on his or her ability to work.  <u>Hinkle v.</u>

<u>Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997).

    A claimant must provide medical evidence that he or she had

an impairment and how severe it was during the time the claimant

alleges they were disabled.  20 C.F.R. § 404.1512(c),

§ 416.912(c).  The evidence that a claimant has an impairment must

come from acceptable medical sources including licensed physicians

or psychologists.  20 C.F.R. § 404.1513(a),

§ 416.913(a).  Evidence from other medical sources, including

therapists, nurse-practitioners, and physicians' assistants, may

be used to show the severity of an impairment and how it affects

the ability to work.  20 C.F.R. § 404.1513(d)(1),

§ 416.913(d)(1).

At step two, the ALJ found that plaintiff's anxiety disorder had a recent onset, and therefore did not meet the durational requirements to be considered severe.  The ALJ further found that plaintiff's situational depression was determined to be non-severe in nature (R. at 26).  The ALJ noted elsewhere in his opinion that a GAF score of 61 was indicative of only mild symptoms while generally functioning pretty well[2] (R. at 25, 27).

As noted above, the ALJ stated that plaintiff's "situational depression" was determined to be non-severe in nature.  However, mental health records dated August 11, 2003 indicated diagnoses of: (1) panic disorder with agoraphobia, (2) major depressive disorder, recurrent, severe, without psychotic features, and (3)

---

[2]GAF (global assessment of functioning) scores are contained in the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34).  A score of 61 indicates the following:

61-70: **Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning...but generally functioning pretty well, has some meaningful interpersonal relationships** (emphasis in original).

R/O[3] posttraumatic stress disorder (R. at 418).  These diagnoses were not fully set forth by the ALJ in his decision.  Furthermore, a psychiatric diagnostic interview dated September 9, 2003, which was prepared by Dr. Lauronilla, a staff psychiatrist, gave plaintiff a GAF of 50,[4] and included diagnoses of: (1) panic disorder with agoraphobia, (2) major depression, recurrent, moderate to severe, without psychotic features, (3) dysthymia,[5] and (4) rule-out mood disorder (depressed) secondary to medical condition (HIV) (R. at 481-482).[6]

Standing alone, a low GAF score does not necessarily evidence

---

[3]This appears to be an abbreviation for "rule out."

[4]A GAF score of 50 indicates:

41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job) (emphasis in original).

DSM-IV-TR at 34.

[5]Dysthymia is defined as a mood disorder characterized by despondency or mild depression.  Compact American Medical Dictionary (1998 at 140).

[6]The report by Dr. Lauronilla was included in the record after the ALJ decision, but before the decision of the Appeals Council.  The report predates the decision of the ALJ, and is therefore relevant evidence when considering the severity of plaintiff's impairments on or before September 23, 2003.

an impairment seriously interfering with a claimant's ability to

work.  A claimant's impairment might lie solely with the social,

rather than the occupational sphere.  A GAF score of fifty or

less, however, does suggest an inability to keep a job.

Therefore, such a GAF score should not be ignored.  Lee v.

Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004).

     Because there is sufficient evidence in the record to

establish that the plaintiff suffers from a mental impairment, the

ALJ erred by failing to evaluate the severity of plaintiff's

mental impairment in accordance with the procedures set forth in

20 C.F.R. §§ 404.1520a, 416.920a, Lamb v. Barnhart, 85 Fed. Appx.

52, 57-58 (10th Cir. Dec. 11, 2003); Cruse v. U.S. Dept. of Health

& Human Services, 49 F.3d 614, 617 (10th Cir. 1995).[7]

Furthermore, SSR 85-28 (Medical impairments that are not severe)

states the following:

          Great care should be exercised in applying the
          not severe impairment concept. If an
          adjudicator is unable to determine clearly the
          effect of an impairment or combination of

_____

     [7]In her brief, defendant concedes that plaintiff failed to
comply with the requirements of 20 C.F.R. §§ 404.1520a, 416.920a,
but argued that the record as a whole supported the ALJ's finding
that plaintiff did not have a severe mental impairment (Doc. 14 at
12).

> impairments on the individual's ability to do
> basic work activities, the sequential
> evaluation process should not end with the not
> severe evaluation step. Rather, it should be
> continued.

1985 WL 56856 at *4.  As other courts have stated, the step two

requirement is generally considered a de minimis screening device

to dispose of groundless claims; thus, reasonable doubts on

severity are to be resolved in favor of the claimant.  <u>Samuel v.</u>

<u>Barnhart</u>, 295 F. Supp.2d 926, 952 (E. D. Wis. 2003).  Therefore,

the case shall be remanded in order for the ALJ to comply with the

above case law, regulations, and rulings, and to specifically

consider the additional evidence set forth above in determining

whether plaintiff has a severe mental impairment at step two.  If

the ALJ finds a severe mental impairment, then any limitations

resulting from that impairment must be considered when

establishing plaintiff's RFC.[8]

## II.  Did the ALJ err in his step three findings?

---

[8]The court will not comment on the RFC opinions as to
plaintiff's limitations as expressed by Dr. Sweet (R. at 474-475,
Feb. 21 or 27, 2004) and Dr. Ta (R. at 476-479, Nov. 6, 2003),
which were not before the ALJ when he made his decision on Sept.
23, 2003.  On remand, the ALJ shall review the medical evidence
and determine what weight, if any, should be accorded to those
opinions in determining plaintiff's RFC on or before Sept. 23,
2003.

Plaintiff has the burden at step three of demonstrating, through medical evidence, that his impairments meet all of the specified medical criteria contained in a particular listing. Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001).  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990).  Because the listed impairments, if met, operate to cut off further inquiry, they should not be read expansively.  Caviness v. Apfel, 4 F. Supp.2d 813, 818 (S.D. Ind. 1998).

The ALJ is required to discuss the evidence and explain why he found that the plaintiff was not disabled at step three.  This court should not properly engage in the task of weighing evidence in disability cases.  The court's function is only to review the Commissioner's decision to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards.  In the absence of ALJ findings supported by specific weighing of the evidence, the court cannot assess whether relevant evidence adequately supports the ALJ's conclusion that the plaintiff did not meet or equal any listed impairment. Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996).

Plaintiff contends that the ALJ failed to perform a proper analysis of whether plaintiff met or equaled listed impairment 14.08 (I) or (N).  The ALJ's analysis on this listed impairment was as follows:

> However, his CD4 count has not dropped to 200 or less and the record does not establish susceptibility to opportunistic diseases as required by listing 14.08.

(R. at 26).

Plaintiff sets forth evidence, which, in his opinion, would support a finding that he meets or equals 14.08(I) or 14.08(N).  This evidence, and these subsections of the listed impairment were not considered by the ALJ.  An ALJ's decision should be evaluated based solely on the reasons stated in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action.  Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  By considering legal or evidentiary matters not

13

considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action.  <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1145 (10th Cir. 2004).  Furthermore, the court may not properly weigh the evidence in the first instance.  <u>Neil v. Apfel</u>, 156 F.3d 1244, 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998).

The court concludes that the limited discussion of listed impairment 14.08 by the ALJ failed to provide a proper basis for his finding that plaintiff does not meet or equal that listed impairment.  The ALJ noted that the CD4 count has not dropped to 200 or less, and that the record does not establish susceptibility to opportunistic diseases.  However, these facts are not determinative of whether plaintiff meets or equals this impairment:

> In general, when the CD4 count is 200/mm or less, the susceptibility to opportunistic disease is considerably increased.  However, a reduced CD4 count alone does not establish a definitive diagnosis of HIV infection, or document the severity or functional effects of HIV infection.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.00(D)(3)(a)(iii) (2006 at 499).  The regulations do not indicate that either a CD4 count of 200 or less or susceptibility to opportunistic diseases are

14

necessary requirements to meet listed impairment 14.08.

Therefore, this case shall be remanded in order for the ALJ to

review the evidence in the record and make a finding as to whether

plaintiff's impairments meet or equal 14.08(I) or 14.08(N).

Furthermore, in a subsequent application for benefits, it was

determined that plaintiff met the requirements of listed

impairment 14.08(N) as of September 24, 2003 (R. at 9).

Therefore, on remand, if the ALJ finds that plaintiff's impairment

does not meet 14.08(N) on or before September 23, 2003, the ALJ

shall set forth the evidentiary basis for such a finding.

IT IS THEREFORE RECOMMENDED that the decision of the

Commissioner be reversed, and that the case be remanded for

further proceedings (sentence four remand) for the reasons set

forth above.

Copies of this recommendation and report shall be provided to

counsel of record for the parties.  Pursuant to 28 U.S.C. §

636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule

72.1.4, the parties may serve and file written objections to the

recommendation within 10 days after being served with a copy.

15

Dated at Wichita, Kansas, on January 4, 2007.

       s/John Thomas Reid
       JOHN THOMAS REID
       United States Magistrate Judge